**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**KENNETH McLACKLAN,**

            **Plaintiff,**

**-vs-**                                          **Case No. 6:10-cv-1270-Orl-28DAB**

**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY,**

            **Defendant.**

_____

## ORDER

Plaintiff, Kenneth McLacklan ("Plaintiff"), brings this action seeking a declaratory judgment to determine rights under an automobile insurance policy. The cause is currently before the Court on the Motion for Summary Judgment (Doc. 38) filed by Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"). Plaintiff has filed a Response (Doc. 41) to the motion, and State Farm has filed a Reply (Doc. 42). Having considered the parties' submissions and pertinent law, the Court concludes that State Farm's motion must be granted.

### I. Background[1]

In 2010, non-party Charles Kelleher ("Kelleher"), a resident of Newnan, Georgia, listed a black 2005 Volkswagen Passat station wagon for sale on the Internet. Shortly thereafter, Plaintiff, a resident of Orlando, Florida, contacted Kelleher and expressed an interest in

---

[1] The facts recited in this Background section are not in dispute. (See, e.g., Doc. 41 at 2 (Plaintiff's statement of agreement with the facts as stated in State Farm's motion)).

acquiring the vehicle. On March 13, 2010, Plaintiff traveled to Kelleher's Georgia residence, and while there he inspected the vehicle and test-drove it around Kelleher's neighborhood.

After Plaintiff test-drove the Passat, he decided to proceed with acquiring the vehicle from Kelleher. Plaintiff gave Kelleher the full purchase price of $7400, and Kelleher gave Plaintiff the only key to the vehicle and the certificate of title, which Kelleher had signed. Plaintiff then left Kelleher's residence in the Passat and began to drive back to his home in Orlando. While Plaintiff was driving southbound on Interstate 75 in Georgia later that evening or early the next morning, the vehicle struck an object in the road—what appeared to be debris from a tractor-trailer. The vehicle was damaged and Plaintiff was injured. In this lawsuit, Plaintiff seeks a declaration that he is entitled to uninsured motorist insurance benefits under an insurance policy issued by State Farm to Kelleher.[2]

## II.  Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate 'in declaratory judgment actions seeking a declaration [as to insurance coverage] when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter

---

[2] As alleged in the Amended Complaint, Plaintiff had "uninsured motorist coverage available through his own insurance policy with Travelers of Florida," but "his injuries far exceed the value of his policy and the limits of [the State Farm policy] combined" and for that reason "Plaintiff is looking to State Farm for coverage." (Doc. 19 ¶ 18).

of law.'" TIG Ins. Co. v. Smart Sch., 401 F. Supp. 2d 1334, 1337 (S.D. Fla. 2005) (quoting Northland Cas. Co. v. HBE Corp., 160 F. Supp. 2d 1348, 1358 (M.D. Fla. 2001)).

### III.  Discussion

The State Farm policy was issued to Kelleher and his wife in the state of Georgia, and it is undisputed that Georgia law governs interpretation of the policy. The policy's uninsured motor vehicle coverage provides in pertinent part—with defined policy terms in italics—that State Farm "will pay compensatory damages for *bodily injury* . . . an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*. (Policy, Attach. to Doc. 1, at 16). "The *bodily injury* must be sustained by an *insured*." (Id.).

The uninsured motor vehicle coverage defines "*insured*" as:

1. *you* [defined elsewhere as the named insured on the Declarations Page];
2. *resident relatives*;
3. any other *person* while *occupying*:
     a. *your car*,
     b. a *newly acquired car*; or
     c. a *temporary substitute car*.
   Such vehicle must be used within the scope of *your* consent.
   Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured*; and
4. any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in 1., 2., or 3. above.

(Id.). The parties agree that the only possible way Plaintiff can qualify as an "*insured*" is as a permissive user of "*your car*" under 3.a. quoted above. The policy defines "*Your Car*" as meaning "the vehicle shown under 'YOUR CAR' on the Declarations Page." (Id. at 6). It is undisputed that the Passat was the vehicle shown on the Declarations Page. However, the

definition of "*Your Car*" in the Policy also expressly states that "*Your Car* does not include a vehicle that *you* no longer own or lease." (Id.).

As agreed by the parties, the crux of this case is who owned the Passat at the time of the accident. If Kelleher owned the Passat, Plaintiff could possibly qualify as a permissive user and an "*insured*" entitled to seek uninsured motorist benefits from State Farm. If Kelleher did not own the Passat, Plaintiff cannot meet the definition of "*insured*" under the policy.

In Georgia, property interests in motor vehicles are created and defined by "the substantive law of contract." Bank South, N.A. v. Zweig, 456 S.E.2d 257, 258 (Ga. Ct. App. 1995).[3] That substantive law is codified in Georgia's Commercial Code, which provides in pertinent part that "[u]nless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his or her performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place." Ga. Code Ann. § 11-2-401(2).

Georgia court decisions applying this contract law to motor vehicle transfers make clear that title to the Passat passed when Kelleher "completed his performance" by physically delivering the car to Plaintiff. For example, in American Mutual Fire Insurance Company v.

---

[3]As noted in Zweig, Georgia has enacted a statute—the Motor Vehicle Certificate of Title Act—pertaining specifically to the titling of motor vehicles, but that law does "'not change the existing case law as to the manner in which ownership of chattels including automobiles [can] be proven.'" 456 S.E.2d at 258 (quoting Owensboro Nat'l Bank v. Jenkins, 328 S.E.2d 399, 402 (Ga. Ct. App. 1985)). For that reason, the Certificate of Title Act need not be discussed in this Order.

Cotton States Mutual Insurance Company, 253 S.E.2d 825, 826 (Ga. Ct. App. 1979), the buyer of a car agreed to "pay a specified amount weekly until the entire purchase price was paid," and the buyer then took possession of the car from the seller after the seller removed his personal belongings from the car. Later that evening, the buyer struck and killed a pedestrian while driving the car, and an issue arose as to insurance coverage. As in the case at bar, the issue hinged on who—the buyer or the seller—owned the car at the time of the accident.

In affirming the trial court's determination "that there was a bona fide sale of the car at the time [the buyer] took possession" of the car, the appellate court in American Mutual noted that there was no question of fact as to whether the sale had been completed. Id. at 827. The parties had not "explicitly agreed that title would not pass upon the delivery of possession," and "an agreement had been reached as to price and terms of payment and . . . both parties considered the sale final when [the buyer] took possession." Id. This was so despite the agreement that weekly payments would be made on the car and despite the fact that full payment had not yet been made. In case at bar, full payment had been made, and thus the facts here even more clearly compel the conclusion that ownership of the car had transferred from Kelleher to Plaintiff prior to the accident.

The case of Mahone v. State Farm Mutual Automobile Insurance Co., 373 S.E.2d 809 (Ga. Ct. App. 1988), also bears mention. There, the owner of a car agreed to sell it, accepting a $500 down payment and agreeing to accept another $500 in periodic installments; the seller signed the certificate of title but retained possession of the title certificate as security. After possession of the car had been transferred to the buyer and

-5-

$900 of the total $1000 price had been paid, the buyer crashed the car into a building. A dispute arose as to insurance coverage under a policy that had been issued to the seller of the car. The court found that the buyer of the car was operating the car with the approval and consent of the named insured and thus qualified as an "insured" under the policy. However, in so concluding, the court noted that "the policy did not specifically provide for the termination of coverage in the event of a transfer of ownership of the insured vehicle" and emphasized that "'[i]t would have been a simple matter for the insurer to have drawn its policy so as to extend coverage only to such vehicles as [the policyholder] actually "owned" or as were "titled" in his name.'" Id. at 810-11 (quoting Auto-Owners Ins. Co. v. Smith, 343 S.E.2d 129, 131 (Ga. Ct. App. 1986)) (second alteration in original). In the instant case, however, the policy issued to Kelleher by State Farm did—through its definition of *"Your Car"*—specifically exclude coverage of vehicles "that *you* no longer own or lease." Thus, Mahone is distinguishable on its facts; here, unlike the policy in Mahone, Kelleher's policy expressly excluded from coverage cars no longer owned by Kelleher.

Plaintiff does not take issue with the facts recited earlier in this Order or with the law cited herein. However, Plaintiff argues that the following facts are disputed and material: that Plaintiff's main purpose in traveling to Georgia on the day he went to Kelleher's house was related to his work and that the Passat purchase was "a side consideration at best"; that at the time of the sale Plaintiff "was considering giving the car to his wife as a gift"; that Plaintiff was concerned about transporting the car across state lines without his wife being there to sign the title; that Kelleher allowed Plaintiff to leave the license plates on the car while it was being transported; that Plaintiff repeatedly asked Kelleher for assurances that

the Passat would remain covered under the State Farm policy while it was being driven from Georgia to Florida; that Kelleher provided Plaintiff with an insurance card and told him that if anything happened Plaintiff would be covered; that Plaintiff or his mother tried to contact Kelleher from the accident scene; and that Kelleher did not cancel the State Farm coverage on the Passat until two days later. (Pl.'s Mem., Doc. 41, at 2-3).

Plaintiff agrees that the issue for resolution is "who 'owned' the vehicle at the time of the accident," (id. at 4), but Plaintiff argues that "[t]he key disputed fact is that [Plaintiff] at the time of sale was intending to gift the car to his wife" and he "was merely acting as a 'transport' for the Passat, (id.). Plaintiff asserts that he was a "permissive user" of the car and that American Mutual is inapplicable because in that case "the buyer of the vehicle was clearly the intended owner at the time of the sale." (Id. at 5). Plaintiff cites no authority for this position and asserts that this case presents what may be an issue of first impression under Georgia law regarding "transport" of a vehicle.

Plaintiff's arguments are not well-taken. The issue for the purpose of determining insurance coverage is whether Kelleher owned the car—not who might ultimately be the owner of the car once Plaintiff got it back to Florida. Plaintiff gave Kelleher the full purchase price in exchange for the vehicle, the sole key thereto, and the certificate of title, and Kelleher had no expectation of ever seeing the car again or being able to assert any ownership interest in it after Plaintiff drove away in it. The fact that Plaintiff may have intended to "gift" the car to his wife—whether expressed to Kelleher or not—is not relevant to the issue of whether the sale was complete. The undisputed facts recounted earlier plainly reflect that at the time Plaintiff left Kelleher's house in the Passat, Kelleher had

completed his performance with regard to physical delivery of the Passat, and the parties had not explicitly agreed that title would not pass at that time. Thus, under Geogia law, Kelleher no longer owned the car as of that time. See Ga. Code Ann. § 11-2-401(2). Additionally, Kelleher had signed over the title certificate and relinquished it to Plaintiff, and Kelleher clearly had no claim to, or right to possession of, the car thereafter. Plaintiff has presented no basis for the proposition that his intention to give the car to his wife when he got to Florida is relevant to the passage of title.[4]

Plaintiff also asserts that Kelleher assured him that Kelleher's State Farm policy would cover Plaintiff while he was transporting the car to Florida. However, regardless of what Kelleher may have told Plaintiff, his statements do not bind State Farm, and State Farm's coverage is as stated in the terms of its policy. Plaintiff does not argue that Kelleher was acting as an agent of State Farm,[5] nor is there any evidentiary basis for a finding of such agency status or authority to bind State Farm. Even assuming arguendo that Kelleher gave

---

[4] Although not noted by either party, section 11-2-401(2)(a) provides that "[i]f the contract requires or authorizes the seller to send the goods to the buyer but does not require him or her to deliver them at destination, title passes to the buyer at the time and place of shipment; but . . . [i]f the contract requires delivery at destination, title passes on tender there." The Court makes no finding as to whether this provision is applicable to the instant transaction. However, this provision certainly suggests that even under Plaintiff's "mere transport" theory, title passed at the "place of shipment"—Kelleher's house—as there has been no suggestion that Kelleher was required to make "delivery at destination."

[5] In his Response memorandum, Plaintiff states: "The Plaintiff is not arguing that Mr. Kelleher was acting as an agent of State Farm, nor is the Plaintiff asserting that Mr. Kelleher had authority to alter or extend the terms of the subject insurance policy. It is Plaintiff's position that those arguments are not germane to the issue of 'ownership' at the time of the accident. Accordingly, Plaintiff will not address those arguments." (Doc. 41 at 6).

some assurance of continued coverage, such a statement does not bind State Farm or affect the issue of ownership.

In sum, the undisputed material facts demonstrate that title to the Passat passed at Kelleher's house when Kelleher completed his performance as seller via physical delivery of the vehicle. Because Kelleher no longer owned the Passat at the time of the accident, the Passat did not qualify as "*your car*" under the terms of the Policy, and Plaintiff was not a permissive user of "*your car*" as defined in the Policy at the time of the accident at issue. Thus, Plaintiff may not recover uninsured motorist benefits under this Policy.

### IV. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. The Motion for Summary Judgment (Doc. 38) filed by Defendant, State Farm Mutual Automobile Insurance Company, is **GRANTED**.

2. For the reasons stated in this Order, Plaintiff does not qualify as an "insured" under the Policy issued by State Farm to Charles Kelleher, and thus Plaintiff is not entitled to coverage under the Policy.

3. The Clerk is directed to enter judgment in favor of Defendant in accordance with this Order and thereafter to close this file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 26th day of July, 2011.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record